IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 11-cv-01862-RPM

HENRY J. BURBACK,

      Plaintiff,

v.

CEVA FREIGHT, LLC, and
CEVA LOGISTICS U.S., INC.,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Plaintiff Henry Burback claims that his former employer, CEVA Freight, discriminated against him on the basis of age when it demoted and ultimately fired him, in violation of the Age Discrimination in Employment Act ("ADEA"). Defendants CEVA Freight and CEVA Logistics have moved for summary judgment.[1]

CEVA was formed in August 2007 after EGL Eagle Global Logistics and TNT Logistics merged. CEVA is a logistics company that currently operates 78 stations throughout the United States. Each station is managed by a Station Manager, and Station Managers report to Vice Presidents of Operations.

Henry Burback worked at CEVA's Denver Station from July, 2000 until his employment was terminated in November 2010, when he was 61 years old. Before the events giving rise to this lawsuit, Burback served as the inbound shipping Operations Manager.

---

[1] Given the Court's Order today, it need not determine whether CEVA Logistics should be dismissed from the lawsuit because it is not an "employer" under the ADEA.

In January 2010, CEVA Vice President of Operations, Shawn Stewart, then 35 years old, took over management of CEVA's Denver Station. Stewart observed that Denver had two Operations Managers, one for inbound shipping and one for outbound shipping, whereas CEVA stations of similar size and complexity only employed one Operations Manager to cover both functions. Fred Ivan, then 62 years old, was outbound shipping Operations Manager.

Plaintiff has evidence to support the following statement of facts, some of which are disputed. In a meeting with Brad LaChapelle, the Denver Station Manager, Shawn Stewart asked how old Ivan and Burback were and when they planned to retire. LaChapelle replied that Ivan would probably retire in another year, but that Burback was not looking to retire. Stewart disparaged Burback during the conversation, though the comments were not age-related. LaChapelle reported Stewart's comments to Burback and Ivan.[2]

In February 2010, Stewart told Burback that the two Operations Manager positions would be consolidated into one. On May 25, 2010, Stewart removed LaChapelle as Station Manager. On the same day, Stewart asked Burback his age and when he planned to retire.

While eliminating one Operations Manager position, Shawn Stewart created a new position of Operations Supervisor to report directly to the new Operations Manager. Hiring for the Operations Manager and Operations Supervisor positions was open to internal and external applicants.

When Burback and Stewart discussed this change and Burback asked about applying for the new Operations Manager position, Stewart told him that he "could roll the dice and see what happened." Stewart also said there was a "bright young lady" in the company looking for an opportunity, and if she did not get one, she might go elsewhere. Burback knew that reference was to Tiffany

---

[2] Fred Ivan retired in July 2010. According to Ivan's affidavit, he retired because he believed Stewart and the new management were going to terminate him.

Rosenbach, a 25-year-old woman who had worked at CEVA for slightly over three years, with little operations experience.

During that same conversation, Burback also expressed concern to Stewart that taking the Operations Supervisor position would negatively affect his salary. In response, Stewart said he would see what he could do.

On August 1, 2010, Plaintiff Burback applied for the Operations Supervisor position in CEVA's online system. Burback chose not to apply for the Operations Manager position because he felt Stewart did not want him to, based on Stewart's comments to LaChapelle, Stewart's demeanor, his "roll the dice" comment, and his stated interest in hiring Rosenbach.

On August 23, 2010, Shawn Stewart hired Burback as the Operations Supervisor for the Denver Station. Taking that new position resulted in a $7,000 annualized pay cut. Burback considered it a demotion.

Shawn Stewart hired Chris Perkins, then 41 years old, to be Denver's new Station Manager in the summer of 2010. As Denver Station Manager, Perkins reported directly to Stewart and was in regular contact with him.

On September 12, 2010, after reviewing seven applications for the new Operations Manager position, Chris Perkins hired Tiffany Rosenbach. It is assumed that Stewart was an invisible hand guiding the Operations Manager selection process.

As Operations Supervisor, Burback was responsible for keeping track of where trailers and other equipment were located and ensuring trailers were stored in a secure location. In September 2010, the tires and wheels were stolen off of a CEVA trailer that was parked in an unsecured yard, costing CEVA approximately $2,120. As a result of the theft, Burback was tasked with relocating CEVA's trailers to a secure lot. One month later, another set of tires and wheels were stolen off of the same

trailer when it was left in an unsecured lot, again costing CEVA about $2,120. Burback was on vacation at the time of the second theft.

Under CEVA's written policy, before a new driver is allowed to haul freight on its behalf, the driver must complete all necessary paperwork, clear a background check, and be approved by CEVA officials. The policy provides that "[a]nyone who does not adhere to the Activation Policy is subject to review and/or termination of contract of employment, whichever applies." Henry Burback was aware of this policy, but routinely used unauthorized drivers. Chris Perkins claims that he first became aware that Burback was using unauthorized drivers after a customer complained to Perkins that a CEVA driver damaged the customer's security gates. When Perkins looked on that day's delivery manifest, he did not recognize the name of the individual who made the delivery. Perkins then reviewed other driver records and noticed a few other names he did not recognize. It is unclear when Perkins discovered this information and whether he spoke to Burback about it, reported it to CEVA management, or did anything at all.

CEVA drivers are independent contractors who are paid for routes based on tariff rates that are established by contract with CEVA's customers. Internal CEVA approvals and formal contract addendums are required for a driver to be paid more than the tariff rate to ensure that CEVA can recover the additional amounts from its customers. Burback acknowledged that it was his responsibility to ensure that CEVA's over-tariff payment policies were followed, but he routinely paid drivers over-tariff rates without executing a contract addendum. Chris Perkins first became aware of Burback's practices when a driver asked Perkins to approve an invoice that was for a higher amount than the going tariff rate. Perkins testified that he is not aware of anyone else at CEVA ever making over-tariff payments to a driver without first executing an addendum. Again, it is unclear when Perkins first learned of this information and what, if anything, he did about it.

Burback's conduct became the subject of a CEVA Investigative Report dated October 19, 2010. Apparently the Report was prompted when Tiffany Rosenbach was reviewing CEVA Administrative and Operation Files, and observed "several inconsistencies" in paperwork prepared or approved by Burback. The author of the Report, Francis Seib, was a CEVA security manager. Seib spoke by telephone with Rosenbach, Chris Perkins, and Vera Williams, CEVA's Director of Human Resources for Colorado. Following those conversations, Seib decided to travel to Denver for further inquiry.

While in Denver, investigator Seib spoke in person with Perkins and Rosenbach about the allegations, and interviewed four lower-level employees, who said that Burback routinely overpaid drivers. Seib also interviewed Burback, who acknowledged routinely overpaying drivers and using unauthorized drivers, and also recognized that those practices were against CEVA policy. Regarding the trailer theft, Burback stated that, after the first incident, Stewart instructed him to acquire a secure yard for trailer storage, which he did, but that he was never told to relocate specific, at-risk trailers. Investigator Seib then contacted Shawn Stewart by phone, and Stewart said that he did in fact instruct Burback to relocate specific trailers; Stewart also emphasized that, given the first theft, Burback, as the supervisor responsible for conducting weekly yard checks and inventories, should have recognized the urgency of relocating at-risk trailers to a secure yard.

According to Defendants, CEVA Human Resources decided to fire Plaintiff Burback based on the results of Seib's investigation. It is unclear who made the decision, but Vera Williams, Chris Perkins, and Shawn Stewart were involved.

On November 2, 2010, Chris Perkins sent Henry Burback a letter terminating his employment because: (1) he failed to secure CEVA's trailers, resulting in theft; (2) he allowed unauthorized

drivers to haul freight; and (3) he made over-tariff payments without executing contract addendums. Perkins was 41 years old and Burback was 61 years old at the time.

Burback was aware of CEVA's policies and procedures prohibiting discrimination, including age discrimination. CEVA's Human Resources department conducted training sessions at least once per year to ensure that employees understood the Company's policies. According to CEVA's Employee Handbook, an employee who feels he/she or another employee is being discriminated against must report the discrimination to his or her manager. Burback never reported anything to CEVA management or to Human Resources.

After his dismissal, Burback submitted a complaint to the U.S. Equal Employment Opportunity Commission. This lawsuit followed.

To establish his claim for discrimination under the ADEA, Burback must prove, by a preponderance of the evidence, that age was the "but for" cause of CEVA's decision to demote and fire him; this does not require him to show that his age was the sole motivating factor, but he must show that age was the factor that made the difference. *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010).

Here, assuming Burback has established a *prima facie* case, CEVA has articulated a number of legitimate, nondiscriminatory reasons for its actions. With regard to Burback's "demotion," CEVA required him to apply for the Operations Manager position because it was a new position with a broader portfolio of responsibilities. It is undisputed that Burback did not apply to be Operations Manager, but rather applied to be and was hired as Operations Supervisor. CEVA's decision to "demote" Burback to Operations Supervisor, instead of making him Operations Manager, is readily explained by the fact that Burback applied to be the former but not the latter. As for Burback's

firing, CEVA identified, then and now, the trailer thefts and Burback's recurrent violations of CEVA policy as the basis for its decision.

The burden accordingly shifts back to Burback to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in CEVA's reasons for its actions. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). Burback argues that Shawn Stewart's comments regarding Burback's age and plans for retirement, as well as Stewart's "roll the dice" remark, establish that Stewart had a discriminatory animus towards Burback. However, these comments are insufficient to establish pretext for two reasons.

First, "stray remarks," and "isolated or ambiguous comments are too abstract . . . to support a finding of age discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (quotations and alteration omitted); *see also Kirkpatrick v. Pfizer, Inc.*, 391 Fed. App'x 712, 719-20 (10th Cir. 2010) (no pretext where supervisor told plaintiff he did not realize how old she was, asked about her retirement plans, and said that her suggestions were "old school"). Stewart's "old school" comment about Burback and Fred Ivan is too ambiguous to support Burback's claim. *See Kirkpatrick*, 391 Fed. App'x at 720. Stewart's comments about Burback's age and retirement plans also do not support an inference of age discrimination, particularly since CEVA's Denver Station was going through substantial organizational change when they were made. Stewart had a legitimate interest in knowing Burback's future plans, "and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992); *see also Kirkpatrick*, 391 Fed. App'x at 720. And Stewart's "roll the dice" comment had nothing to do with Burback's age; rather, it was a matter-of-fact statement that Burback, like any other candidate, was not guaranteed the Operations Manager position if he applied.

Second, even if Stewart's comments could be characterized as discriminatory, Burback has failed to demonstrate a nexus between those comments and CEVA's adverse actions. *See Cone*, 14 F.3d at 531. There is nothing in the record connecting Stewart's comments to his decision to consolidate the Operations Manager positions and champion Tiffany Rosenbach over Burback, or to his involvement in the decision to fire Burback.

Burback also claims the reasons given for his firing were pretextual because, regardless of CEVA's written policy, it was common practice, known to previous station managers, to use unauthorized drivers and pay drivers over-tariff rates without executing a contract addendum when necessary to serve customer needs. However, it is undisputed that CEVA had explicit policies prohibiting those practices, and that Chris Perkins, the incumbent Station Manager in Denver, was not aware of and did not approve of them.

Henry Burback has failed to show sufficient evidence that would permit a jury to reject the legitimate, non-discriminatory reasons CEVA offered for his demotion and firing and conclude that age was the factor that made the difference in those decisions. Accordingly, it is,

ORDERED that Defendants' Motion for Summary Judgment is granted.

Dated:  May 20, 2013.

BY THE COURT:

**s/Richard P. Matsch**

_____
Richard P. Matsch
Senior District Judge